```
              IN THE UNITED STATES DISTRICT COURT
              FOR THE SOUTHERN DISTRICT OF TEXAS
                        HOUSTON DIVISION

ROBERT WILLIAMS,                §
TDCJ-CID NO.1482900,            §
         Plaintiff,             §
v.                              §   CIVIL ACTION NO. H-11-2228
                                §
DIR. ALLEN HIGHTOWER, et al.,   §
                                §
         Defendants.            §
```

### MEMORANDUM AND ORDER OF DISMISSAL

Robert Williams, an inmate incarcerated in the Texas Department of Criminal Justice-Correctional Institutions Division proceeding *pro se* and *in forma pauperis*, has filed a civil rights complaint pursuant to 42 U.S.C. § 1983 and a memorandum in support of the complaint. (Docket Entries No.7, No.3). Plaintiff claims that he has numerous mental health disorders that require medication, which defendants have denied. He seeks compensatory and punitive damages and injunctive relief from defendants in their official capacities on grounds of negligence under the Texas Health Care Liability Act, deliberate indifference under the Eighth Amendment, and denial of equal protection. (Docket Entry No.3).

For the reasons to follow, the Court will dismiss this complaint with prejudice.

### I. DISCUSSION

Because plaintiff is a prisoner who proceeds *in forma pauperis*, the district court may scrutinize the basis of his complaint, and, if appropriate, dismiss the case at any time

without service of process if the court determines that the complaint is frivolous, malicious, fails to state a claim upon which relief may be granted or seeks monetary relief from a defendant who is immune from such relief. 42 U.S.C. 28 U.S.C. § 1915(e)(2)(B). In conducting that analysis, a prisoner's *pro se* pleading is reviewed under a less stringent standard that those drafted by an attorney and is entitled to a liberal construction that includes all reasonable inferences, which can be drawn from it. Haines v. Kerner, 404 U.S. 519 (1972).

A complaint may be dismissed as frivolous if it lacks any arguable basis in law or fact. Neitzke v. Williams, 490 U.S. 319, 325 (1989). "A complaint lacks an arguable basis in law if it is based on an indisputably meritless legal theory, such as if the complaint alleges violation of a legal interest which clearly does not exist." Harris v. Hegmann, 198 F.3d 153, 156 (5th Cir. 1999). A court must not dismiss a complaint for failure to state a claim unless the plaintiff has failed to plead "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 547 (2007). Although material allegations in the complaint must be accepted as true and construed in the light most favorable to the nonmoving party, a court is not required to accept conclusory legal allegations cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the factual allegations. Id. at 555 (noting that "[f]actual

allegations must be enough to raise a right to relief above the speculative level).

### A. Damages

To the extent that plaintiff seeks monetary damages from defendants in their official capacities as employees of state agencies, *i.e.*, the Texas Department of Criminal Justice and the University of Texas Medical Branch, his claims are barred by the Eleventh Amendment. See <u>Oliver v. Scott</u>, 276 F.3d 736, 742 (5th Cir. 2002).

To the extent that plaintiff seeks punitive damages, he alleges no facts that would give rise to a cognizable claim that defendants were motivated by evil intent or that their actions demonstrate reckless or callous indifference to his constitutional rights. See <u>Williams v. Kaufman County</u>, 352 F.3d 994, 1015 (5th Cir. 2003) (noting punitive damages awarded where defendant's conduct "is motivated by evil intent or demonstrates reckless or callous indifference to a person's constitutional rights"). Accordingly, plaintiff's request for compensatory damages from defendants in their official capacities and his request for punitive damages are DENIED.

### B. Personal Involvement & Grievances

To the extent that plaintiff seeks relief from Executive Director Brad Livingston, Medical Services Director Allen

Hightower, Warden Diana Kukua, and Practice Manager Shanta Crawford as administrators or supervisors, he fails to show their personal involvement in his mental health treatment. Theories of vicarious liability, such as *respondeat superior*, cannot support a cause of action under section 1983. Thompson v. Steele, 709 F.2d 381 (5th Cir. 1983). A supervisory official "may be held liable if there exists either (1) personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." Thompkins v. Belt, 828 F.2d 298, 304 (5th Cir. 1987). To state an actionable claim, a civil rights plaintiff must establish a causal connection between the acts or omissions of the defendant and the resultant constitutional deprivation. Reimer v. Smith, 663 F.2d 1316, 1323 (5th Cir. 1981). Plaintiff states no facts showing that any of these defendants had any personal involvement in his mental health treatment. Although plaintiff attributes the denial of psychotropic drugs to the State's budgetary concerns, he states no facts giving rise to a causal connection between the conduct of defendants Livingston, Hightower, or Kukua and his claims of inadequate mental health care.

To the extent that plaintiff complains about unfavorable responses to his grievances by these defendants, such claims are legally frivolous and subject to dismissal. An inmate does not have a constitutional entitlement to an adequate grievance

4

procedure. See e.g., Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994) (there is no constitutional right to participate in grievance procedures); Antonelli v. Sheahan, 81 F.3d 1422, 1430-31 (7th Cir. 1996) (inmates do not have a constitutional right to an adequate grievance procedure); Flick v. Alba, 932 F.2d 728, 729 (8th Cir. 1991) (per curiam) (inmates do not have a constitutional right to participate in grievance procedures); see also Geiger v. Jowers, 404 F.3d 371, 373-74 (5th Cir. 2005) (finding prisoner did not have liberty interest in having grievance resolved to his satisfaction). Accordingly, plaintiff's claims against defendants Livingston, Hightower, Kukua, and Crawford in their individual capacities are subject to dismissal.

## C. Constitutional Claims

To the extent that plaintiff seeks compensatory damages or injunctive relief from defendants Douglas Bertling and Dr. Yap, he fails to state a constitutional claim that would give rise to such relief. The Eighth Amendment's prohibition against cruel and unusual punishment forbids deliberate indifference to the serious medical needs of prisoners. Estelle v. Gamble, 429 U.S. 97 (1976). "Deliberate indifference is an extremely high standard to meet." Domino v. Texas Dep't of Criminal Justice, 239 F.3d 752, 756 (5th Cir. 2001). Deliberate indifference requires a showing of unnecessary and wanton infliction of pain; McCormick v. Stalder, 105 F.3d 1059, 1061 (5th Cir. 1999); that rising "to the level of

egregious intentional conduct." Gobert v. Caldwell, 463 F.3d 339, 351 (5th Cir. 2006). A prison official may not be found liable under the Eighth Amendment unless the official knows of and disregards an excessive risk to inmate health or safety. Farmer v. Brennan, 511 U.S. 825, 839-40 (1994). The official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must draw the inference. Id. at 837. The "failure to alleviate a significant risk that [the official] should have perceived, but did not" is insufficient to show deliberate indifference. Id. at 838. Under exceptional circumstances, a prison official's knowledge of a substantial risk of harm may be inferred by the obviousness of that risk. Id.

"Disagreement with medical treatment does not state a claim for Eighth Amendment indifference to medical needs." Norton v. Dimazana, 122 F.3d 286, 292 (5th Cir. 1997). A plaintiff must allege and raise a fact issue as to whether prison officials "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." Johnson v. Treen, 759 F.2d 1236, 1238 (5th Cir. 1985). Deliberate indifference is especially difficult to show when the inmate has been provided with ongoing medical treatment. "Unsuccessful medical treatment, acts of negligence, or medical

malpractice do not constitute deliberate indifference." <u>Gobert</u>, 463 F.3d at 346. Records showing that an inmate was given medical examinations, treatments, and medications may rebut an inmate's allegations of deliberate indifference in denying or delaying medical care. *See* <u>Varnado v. Lynaugh</u>, 920 F.2d 320 (5th Cir. 1991).

Plaintiff's mental health records attached to his Memorandum (Docket Entry No.3), reflect that upon his conviction for possession of drugs, plaintiff arrived on the Holliday Unit of TDCJ-CID from the Travis County Jail with a "regimen of psychiatric medication," which were continued until his mental health needs could be assessed by a psychiatrist. (Docket Entry No.3-2, page 25). Following an initial examination, he was diagnosed with mental health disorders and a visit rescheduled in four weeks. (<u>Id.</u>, page 26). A Report of Psychological Testing dated May 5, 2008, by Psychologist Doug Bertling on the Ellis Unit reflects that plaintiff's mental health issues were not supported by testing. (<u>Id.</u>, pages 32, 34). On May 6, 2008, Dr. Yap reduced plaintiff's medication but did not eliminate it; he also ordered follow-up testing. (<u>Id.</u>, page 35). On May 19, 2008, plaintiff was seen by Bertling because he wanted his medication back and complained about hearing voices. (<u>Id.</u>, page 37). Bertling noted that "[o]ffender has been throughly evaluated/tested and is drug seeking in his behaviors." (<u>Id.</u>). He indicated that plaintiff had no apparent

7

mental health needs. (Id.). Notes from an outpatient clinical interview dated August 21, 2008, reflect that plaintiff was most likely manufacturing his symptoms for secondary gain and that he was demanding drugs. (Id., page 42). Counseling was offered but "[n]o specific intervention issues were presented." (Id.).

Plaintiff claims that following a suicide attempt, he was transferred to the Skyview Unit on December 22, 2008. (Docket Entry No.3, page 6). He was informed by doctors on the Skyview Unit that the test Dr. Yap gave plaintiff did not show that he needed the drugs. (Id.). Plaintiff was transferred back to the Ellis Unit on December 24, 2008. (Id.).

Notes from a Skyview Unit's Mental Health Inpatient Crisis Management record dated December 22, 2008, reflects that plaintiff was admitted to crisis management because of "multiple, superficial scratches to wrist and contusion on mid-forehead." (Docket Entry No.3-3, page 2). Skyview's Psychologist King noted that plaintiff had a history of self-injurious behavior within that past year that was not potentially lethal and assessed that plaintiff's risk of a potentially lethal suicide was low. (Id., page 3). King also noted that after plaintiff arrived "at the Ellis Unit, he was tested with the MMPI-2 and produced a fake-bad profile and his meds were stopped." (Id., page 2). He also noted that plaintiff had been off medication since May but was demanding to be placed back on them. (Id.). Psychologist King also found no evidence of mental illness.

8

(Id.).

Notes from a scheduled appointment with a mental health provider on May 19, 2008, show that plaintiff had been seen repeatedly by mental health professionals on complaints of hearing voices, hallucinations, attempting to harm himself, and loss of sleep, and that he requested to be put back on the medications that he took in the free world. (Docket Entry No.30-2, page 37). The notes also show that plaintiff "has been throughly evaluated/tested and is drug seeking in his behaviors." (Id.). The mental health care provider assessed plaintiff with no apparent mental health needs. (Id.). Likewise, notes from Outpatient Mental Health Services dated February 13, 2009, reflect that plaintiff had made threats of self-harm, reported hallucinations, and sought drugs, but he exhibited no signs of psychoses. (Docket Entry No.3-3, page 9).

A Mental Health Summary of Freeworld Records dated March 27, 2009, which plaintiff attached to his Memorandum, show that he was admitted to the Austin Mental Health and Mental Retardation Center on September 1, 2005, and diagnosed with a schizoaffective disorder; he was discharged on April 25, 2007, with the same diagnosis. (Docket Entry No.3-3, page 15). The disorder was treated with drugs. (Id.). Pscyhologist Doug Bertling noted on the same record that plaintiff came to TDCJ on a drug conviction and that he had shown drug seeking behaviors on this facility but he had not shown symptoms of schizoaffective disorder. (Docket Entry No.3-3, page

15). An earlier record dated February 25, 2009, notes plaintiff's complaints of trying to harm himself and his attempts to obtain drugs for reported hallucinations even though testing and clinic interviews show that he did not have hallucinations and was manufacturing the same to get medication. (Id., page 13). In fact, plaintiff's pleadings reflect no mental health assessments by medical or mental health personnel since May 2008, which show that plaintiff has been diagnosed with a mental health disorder that requires psychotropic medication. (Docket Entries No.3-3, No.3-4). On January 15, 2011, Dr. Yap again found no evidence of a mental health disorder that required medication. (Docket Entry No.3-4, page 44). Plaintiff, however, continues to seek medication from mental health professionals. (Docket Entry No.3-4, pages 50-66).

In short, plaintiff's pleadings show that mental health personnel were responsive to his requests to see them regarding his mental health issues but disagreed with his need for medication. Plaintiff's disagreement with his medical treatment does not state a claim for Eighth Amendment indifference to medical needs. See Norton, 122 F.3d at 292. Accordingly, his deliberate indifference claim is subject to dismissal.

Although plaintiff claims that defendants violated his equal protection rights, he states no facts that would give rise to an equal protection claim. See Taylor v. Johnson, 257 F.3d 470, 473 (5th Cir. 2001) (stating to maintain an equal protection claim,

plaintiff "must allege and prove that he received treatment different from that received by similarly situated individuals and the unequal treatment stemmed from a discriminatory intent"). Accordingly, his equal protection claim is subject to dismissal.

### D. State Law Claims

To the extent that plaintiff seeks relief in this Court under the Texas Health Care Liability Act, this Court declines to exercise jurisdiction over such claim. (Docket Entry No.3, page 7). A district court may decline to exercise supplemental jurisdiction if it has dismissed all the claims over which it had original jurisdiction. 28 U.S.C. § 1367(c)(3). Although the general rule in the Fifth Circuit "is to dismiss state claims when the federal claims to which they are pendent are dismissed[,]" Parker & Parsley Petroleum Co. v. Dresser Indus., 972 F.2d 580, 585 (5th Cir. 1992); Priester v. Lowndes County, 354 F.3d 414, 425 (5th Cir. 2004), the Supreme Court has counseled that district court's should examine factors such as economy, convenience, fairness, federalism, and comity in determining whether jurisdiction should be exercised. United Mine Workers v. Gibbs, 383 U.S. 715, 726 (1966). Because the Court has not had substantial involvement with this case, the Court declines to exercise supplemental jurisdiction over plaintiff's state law claims against defendants.

## II. CONCLUSION

Based on the foregoing, the Court ORDERS the following:

1. Plaintiff's complaint is DISMISSED WITH PREJUDICE, pursuant to 28 U.S.C. § 1915(e)(2)(B).

2. All other pending motions, if any, are DENIED.

The Clerk will provide a copy of this Order to plaintiff and to the District Clerk for the Eastern District of Texas, 211 West Ferguson, Tyler, Texas 75702, Attention: Manager of the Three-strikes List.

SIGNED at Houston, Texas, on November 15, 2011.

EWING WERLEIN, JR.
UNITED STATES DISTRICT JUDGE